## Case No. 3,574.

### DARBY et al. v. WRIGHT et al.

[3 Blatchf. 170.][1]

Circuit Court, N. D. New York. May, 1854

CONSTITUTIONAL LAW — JUDICIAL POWERS — RELEASE OF STATE LIENS AGAINST CORPORATIONS —CONSTRUCTION OF STATUTE.

1. The authority of the judiciary to declare void any act of the legislature that is manifestly in conflict with the constitution, is well settled; but such authority should always be exercised with great caution and deliberation.

2. The act of the legislature of New York, passed December 14th, 1847 (Laws 1847, c. 471), to release the prior lien of the state on the Hudson and Berkshire Railroad, does not violate the 4th section of the 7th article of the constitution of New York, of 1846, which forbids the release or compromise of the claims of the state against any incorporated company, to pay the interest and redeem the principal of the stock of the state theretofore loaned or advanced to such company, and provides that such claims shall be fairly enforced.

3. The act of 1847 does not release, reduce, or compromise the debt created against the Hudson and Berkshire Railroad Company by the act of April 28, 1840 (Laws 1840, c. 178), passed for the aid of said company; nor does it release from the mortgage to the state, created by the act of 1840, any of the property covered by that mortgage.

4. The constitution only requires that claims originating in loans of state credit, made before its adoption, and the securities taken on such loans, shall be held as the property of the state, and be managed for its direct pecuniary benefit, and shall not be released, reduced, or surrendered for the benefit of the borrowing corporations, in disregard of the pecuniary interest of the state, in its distinct and single character of a creditor of the corporation. With those restrictions, the exercise of the ordinary legislative discretion in the management of the claims is not prohibited.

5. The validity of the act of 1847 must be determined by its character and purposes at the time it was passed; and the rights of those who have, on the faith of its validity, advanced money on bonds issued under it and made by it a first lien on the road, cannot depend on the yet unsettled question, whether the arrangement authorized by it will, in the end, prove beneficial or injurious to the state, as a creditor of the corporation.

6. The act of 1847 is not in violation of the 9th section of the 7th article of the constitution of 1846, which forbids the giving or loaning of the credit of the state in aid of any corporation.

7. The comptroller of the state being about to sell the road, and appropriate its proceeds to the sole benefit of the state, to the exclusion of the holders of the bonds issued under the act of 1847, this court enjoined him from so doing in a suit brought by such bondholders.

In equity. [Bill by Abraham Darby and others against John C. Wright, comptroller of the state of New York, and others.] This was a motion to dissolve an injunction that had been granted by Mr. Justice NELSON. The facts sufficiently appear in the opinion of the court.

HALL, District Judge. The principal question presented in this case is one of constitutional construction. The material facts of the case, as substantially conceded upon the argument, are as follows:

On the 28th of April, 1840, an act was passed by the legislature of the state of New York, entitled "An act in aid of the Hudson and Berkshire Railroad Company." By this act, the comptroller of the state was authorized, whenever it should be made to appear to him, by the affidavits of the president and two of the directors of the company, that $500,000 had been expended by the company

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

in the construction of their road and its necessary accommodations, to issue and deliver to the company special certificates of stock, to the amount of $150,000, bearing an interest of not exceeding six per cent., as a loan to the company. This stock was subsequently issued, and, by force of the provisions of such act, and the proceedings had under the same, a certificate under the corporate seal of the company, signed by their president, and duly recorded in the office of the secretary of state, became a mortgage to the people of the state of New York, upon the Hudson and Berkshire Railroad, and every part thereof, with the appurtenances, for securing the payment of the principal and interest of the money for which such stock was issued. And such mortgage was by said act declared to be, and in fact was, a first and prior lien on the said road and appurtenances, before any other lien or incumbrance thereon.

On the 3d of November, 1846, the present constitution was adopted. The 4th section of the 7th article thereof is in the following words: "The claims of the state against any incorporated company, to pay the interest and redeem the principal of the stock of the state, loaned or advanced to such company, shall be fairly enforced and not released or compromised; and the moneys arising from such claims shall be set apart and applied as part of the sinking fund provided in the second section of this article. But the time limited for the fulfilment of any condition of any release or compromise heretofore made or provided for, may be extended by law."

By an act passed December 14th, 1847, entitled, "An act to release the prior lien of the state on the Hudson and Berkshire Railroad, and to authorize the stockholders thereof to relay the same with a heavy T rail," the directors were authorized to make further calls of ten dollars a share on the capital stock of the company; and, whenever $50,000 had been paid on such calls, and expended as required by said act, upon filing with the comptroller the affidavit of the president and two of the directors of the company, showing that the sum of $50,000 had been actually expended "in improving said road, by relaying the superstructure thereof with a heavy iron rail, and by rebuilding or repairing the bridges thereon;" and that an additional indebtedness, after expending that sum, had arisen for expenditures on account of such specified improvements, the bonds of such company, to the amount of such additional expenditures, not exceeding in all the sum of $175,000, were authorized to be made by the company, and numbered and registered, and countersigned and issued by the comptroller of the state; and the act then declared, that the same should thereupon immediately become a mortgage lien upon said road, and its appurtenances, and should have priority of lien over the said mortgage to the state.

This act also authorized the sale of the road by the comptroller, in case of the non-payment of the interest or, principal of such bonds, in the same manner in which, by the former act, its sale was authorized, in case the bonds issued under that act were not paid by the company.

The bonds for this sum of $175,000 were afterwards duly made by the company, and numbered and registered, and countersigned and issued by the comptroller, under the provisions of the act of 1847; and the plaintiffs are holders of a portion of such bonds.

The state having commenced proceedings for a sale of the road, in pursuance of an opinion given by a former attorney-general, declaring that the act of 1847 was unconstitutional and void, and that it was therefore manifestly the duty of the comptroller to set apart the whole proceeds of the sale of such road, and apply them to the sinking fund provided by the constitution for the payment of the general fund debt of the state, this bill was filed, and an injunction granted, to prevent such sale and the appropriation of its proceeds to the sole benefit of the state, to the exclusion of the rights of the bondholders. This case, therefore, presents the difficult question whether the act of 1847 is unconstitutional and void.

I am not aware that this question had ever, before the commencement of this suit, been the subject of legal controversy. It must, therefore, be determined without the benefit of any prior judicial decision; and the opinion of a former attorney-general, that the act of 1847 is unconstitutional, being opposed by an official opinion of his successor that it is free from any constitutional objection, the question may be considered as unaffected by the official opinions of the law-officers of the state.

It must, of course, be conceded, that any act of the legislature manifestly in conflict with the constitution, must be declared void, without hesitation, whenever the question of its validity is distinctly and necessarily presented, in the course of any judicial proceeding in the courts of the state or of the United States. The authority of the judiciary in such cases is well settled, and is, in truth, the obvious and necessary result of our American system of government, in which the powers of the legislative department are given, defined, and restricted by a written constitution. The authority to annul laws deliberately and solemnly passed, in the form prescribed by the constitution, is, nevertheless, one of great delicacy, and should always be exercised with great caution and deliberation. Such was undoubtedly the opinion of Mr. Senator Verplanck, when he said, in the case of Cochran v. Van Surlay, 20 Wend. 365: "But it is only in express constitutional provisions, limiting legislative power and controlling the temporary will of a majority, by a permanent and paramount law, settled by the deliberate wisdom of the nation, that I

can find a safe and solid ground for the authority of courts of justice to declare void any legislative enactment. Any assumption of authority beyond this, would be to place in the hands of a judiciary powers too great and too undefined either for its own security or the protection of private rights." And again: "I cannot bring myself to approve of the power of courts to annul any law solemnly passed, either on an assumed ground of its being contrary to natural equity, or from a broad, loose and vague interpretation of a constitutional provision, beyond its natural and obvious sense."

In this case, the constitution inhibited the release or compromise of the claims of the state against the Hudson and Berkshire Railroad Company, to pay the interest and redeem the principal of the stocks of the state loaned or advanced to that company under the act of 1840, and required that such claims should be fairly enforced; and the first and principal question is, whether the act of 1847 provided for a release or compromise of such claims, or was in conflict with the provision that such claims should be fairly enforced.

The stock having been issued to the company by way of loan, and the company being liable for the full amount of the loan, irrespective of the lien or mortgage, and therefore liable to have the claim of the state enforced against it by the ordinary process of law, it may, possibly, admit of some question, whether the legislature could not have relinquished the lien, leaving the liability of the company untouched, without a violation of the provisions of the constitution. I do not intend to discuss this question, but shall assume that the terms, "claims of the state," must be held to embrace the lien upon the road, as well as the mere liability of the corporation—the security for its payment as well as the debt itself. Conceding this to be the correct construction of the constitutional provision, I am still of the opinion that the act of 1847 is valid.

The act does not expressly release, reduce or compromise the debt, nor does it, in terms, or by necessary implication, or in its necessary or natural result, release from the lien of the state all or any portion of the property covered by such lien. The debt still continues, undischarged and undiminished, notwithstanding the provisions of that act, and the lien of the state remains undischarged. Although it is true that the provision, that bonds to the extent of $175,000 may be issued and made a previous lien upon the road, in case $225,000 shall be added to the substantial and permanent value thereof, may in the end prove to be an injudicious financial arrangement, yet, on the other hand, it may have added strength to the then doubtful security held by the state; and it is to be presumed that the legislature had in view the substantial interests of the state, and supposed that the arrangement would give equal and perhaps greater security to its claim.

Considered in the very worse aspect for the plaintiffs, the arrangement was at most but a change of securities; and, if this act be unconstitutional, the legislature could not, under any circumstances, have discharged the lien on receiving other and better security for the debt. I cannot think that such a construction of the constitution can be required or justified. It would hardly be contended, in a suit between private parties, that a contract made by an agent, whose delegated powers over a debt due to his principal are conceded to be unlimited, except by an express prohibition to release or compromise it, by which contract one set of collateral securities for the payment of the debt is given up, and another set, which both parties believe in good faith to be equally or more valuable, is substituted in its place, with a view to some ulterior arrangements supposed to promise advantages alike to the debtor and the creditor, is void and of no effect, for want of power in the agent. But, in this case, there was no actual change of security, no release of one pledge and acceptance of another; although for an object deemed beneficial to the state, and upon what was deemed an abundant consideration, the state agreed to risk the chance of its own security being diminished, to secure a chance that it might be increased. The substantial and enduring character of the value to be added to the road, by relaying it with a heavy rail, and making other improvements, of a like permanent character, to the whole extent of the money raised by the new bonds, and the requirement that $50,000 in addition should be raised by calls on the stockholders, and expended in like permanent improvements, before the lien of the state should be postponed, shows that the legislature deemed the added value of $225,000 to be the real and substantial security for the $175,000, and sufficient to prevent any loss to the state in consequence of the new and permanent lien which the act of 1847 gave to the holders of the bonds issued under that act.

The transaction authorized by that act, in its practical effect upon the prior claims of the state, may be likened to the giving of a subsequent bottomry bond, for the permanent repair of a vessel already subject to a previously existing bottomry lien. In both cases, the postponement of the payment of the first lien out of the funds arising from the sale of the property originally pledged and of the added value, is substantially effected; but, in the case supposed, no one would think of saying that the claim under the prior bond was released or compromised, or that it could not still be fairly enforced.

The intent and object and just effect of the constitutional provision appear to me to require only, that claims originating in loans of state credit made prior to the adoption of the constitution, and the securities taken upon

such loans, shall be held as the property of the state, and shall be managed for its direct pecuniary benefit, and shall not be released, reduced or surrendered for the benefit of the borrowing corporations, in disregard of the pecuniary interest of the state, in its distinct and single character of a creditor of the corporation. It does not prohibit the exercise of the ordinary legislative discretion, in the management of these claims, farther than to prohibit the doing of any act which, in its intention and purpose, or natural or necessary result, is inconsistent with the constitutional duty of the legislature, to disregard the interests of the debtor corporation, when those interests conflict with the paramount interests of the state as its creditor.

The fact that the act of 1847 was passed by the legislature with the constitutional provision before them, must, under the circumstances, be considered as sufficient evidence that, at the time of its passage, the legislature had no intention of releasing or compromising the claim of the state, but considered the arrangement authorized as an expedient and judicious financial measure, which would not, in its necessary, natural, or probable results, be inconsistent with the pecuniary interests of the state. To hold otherwise, would convey an imputation upon the legislature, which no court should sanction, until forced to do so by clear and conclusive testimony.

The validity of the act in question must necessarily be determined by its character and purposes at the time it was passed; and the rights of those who have advanced money on the faith of its validity, cannot depend upon the yet unsettled question, whether the arrangement it authorized will, in the end, and after the lapse of more than seven years, be found to be beneficial or injurious to the state, in the simple character of an ordinary creditor of the corporation. As it was not then, in form or in substance, opposed to the provisions of the constitution, and as there is no ground whatever for imputing a design to evade those provisions. I cannot, in any view of the case, convince myself that the act, either in itself or in connection with the proceedings under it, was, in substance and effect, an infraction of the constitution.

Having fully considered the objection, that the act of 1847 was, in effect, a release or compromise of the claim of the state, the other questions presented on the argument can be disposed of without difficulty. There is certainly nothing in the act which can prevent the claim of the state from being fairly enforced. To repudiate the law and subject the heavy iron purchased by the bonds held by the plaintiffs and others to a paramount lien in favor of the state, would be a most unfair and unequitable enforcement of the claim of the state, and one which a court of equity would, in my judgment, be required to restrain. If the state could lawfully repudiate the agreement made in the act of 1847, and should assert its invalidity, it could not equitable appropriate to the payment of its own debt the iron rails paid for with the money which the bondholders advanced in undoubting confidence that the act of 1847 was the law of the land. But, in the view I have taken of the case, it is unnecessary to consider this question, because I find no constitutional objection to the act of 1847.

It is suggested, in the opinion of the former attorney-general, that the act of 1847 is unconstitutional upon the ground that it may be regarded as a new loan of the credit of the state to the company, in violation of section 9 of article 7 of the constitution, which declares that "the credit of the state shall not, in any manner, be given or loaned to, or in aid of, any individual, association or corporation." But I cannot perceive that the credit of the state is given or loaned, where the state has assumed no debt, and has incurred no obligation, present or prospective, absolute or contingent. The motion to dissolve the injunction is denied.